WELLS *v.* TATUM.

*(Circuit Court, S. D. Ohio, W. D.   June 22, 1891.)*

1. PATENTS FOR INVENTIONS—PATENTABLE NOVELTY—PAPER FILES.
    In letters patent No. 386,674, issued July 24, 1888, to Arthur J. Wells, claim 1 is for "a paper file consisting of a base adapted to lie upon a desk or table, and formed with a series of perforations and adjustable partitions, provided with steps removably fitting into the perforated base." Claim 2 is for "the combination of the base, A, and perforated plate, D, secured to its top, and the adjustable partitions, B, having the steps, *a, c,* adapted to enter the perforations." *Held,* that the patent is invalid for want of novelty.

2. SAME.
    In letters patent 386,675, issued July 24, 1888, to Arthur J. Wells, the claim is for "the combination of the base, A, having rabbets, *a,* extending lengthwise in the outer edges' thereof, rods, *b,* detachably secured to the base within the rabbets, and slides, C, having depending feet, *c,* and eyes, *d,* through which the rods pass." *Held,* that this patent is likewise void for want of novelty.

In Equity.

Suit for infringement of patents Nos. 386,674 and 386,675, for paper or bill file, issued July 24, 1888, to Arthur J. Wells, and by him assigned to complainant August 10, 1888.

The article described and claimed in 386,674 is a knock-down portable paper or bill file, consisting of a base having a metal plate on its upper surface, provided with perforations, extending in series at intervals throughout its length, and partitions, preferably of wire, having steps or feet removably fitting into these perforations, which serve as seats or sockets, and support the partitions in their operative position.

The construction specified permits the file to be taken apart and shipped in a "knock-down" condition, and then the parts may be read-

ily put together again for use. The partitions may be arranged on the base at any required distance apart for producing any desired width of compartment between the partitions for use, and the insertion of the steps or feet of the partitions in the perforations firmly holds them in position, and prevents disarrangement of the compartments.

Patent No. 386,675 differs from No. 386,674 merely in features of construction. It comprises a base having longitudinal grooves or rabbets at its outer edges. Two rods of wire, one located in each rabbet, and detachably secured to the base within the rabbets, form a way upon which adjustable partitions, provided with depending feet, having eyes which are guided on the rods, may be placed as desired.

Claims 1 and 2 of patent No. 386,674, which it is claimed are infringed, are as follows:

"(1) The herein described paper file, consisting of a base adapted to lie upon a desk or table, and formed with a series of perforations, and adjustable partitions, provided with steps removably fitting into the perforated base, substantially as and for the purpose set forth.

"(2) The combination of the base, A, and perforated plate, D, secured to its top, and the adjustable partitions, B, having the steps, *a, c,* adapted to enter the perforations, substantially as and for the purpose set forth."

Patent No. 384,675 has but a single claim, which is as follows:

"The combination of the base, A, having rabbets, *a,* extending lengthwise in the outer edges thereof, rods, *b,* detachably secured to the base within the rabbets and slides, C, having depending feet, *c,* and eyes, *d,* through which the rods, *b,* pass, substantially as and for the purpose set forth."

*Hey & Wilkinson,* for complainant.
*Wood & Boyd,* for respondent.

SAGE, J., (*after stating the facts as above.*) Under the defense that the patents are substantially anticipated, the defendant relies, as to patent No. 386,674, first, upon a patent granted in 1868 to Smith and Cheever (reissue No. 4,864, original No. 76,834) for improvement in paper files. The drawings show, and the specification describes, a paper file-holder, having a lever clamping device so constructed and combined with a base provided with a stationary upright that, by pressing upon the lower part of the device, files of papers can be securely clamped and automatically held, and, by pressing upon the upper part of the papers, can be readily unclamped. The upright is adjustable. The base is provided with flanged grooves, to which the upright is attached by angular braces or plates. These braces are attached to the adjustable upright with their angular arms projecting towards the stationary upright, and their lugs arranged to work in the flanged grooves, so as to bind or catch upon the flanges of the grooves, and automatically hold the adjustable upright when it is pressed against the papers. In operation, the papers, being placed in the holder against the stationary upright, are securely clamped by pressing forward upon the lower part of the adjustable upright or lever, and the holder is automatically locked by the lugs catching against the under part of the flanges, which is caused by the out-

ward pressure of the papers, forcing backward the upper part of the adjustable upright. The papers are readily unclamped by pressing forward upon the upper part of the adjustable upright, which releases the lugs, and allows the adjustable upright to be moved backward. To say the least of this device, it so narrows the range within which the complainant could operate in constructing his device as to leave him little room for invention, and to preclude any claim that he was a pioneer.

Following the Smith and Cheever patent came Kuhnle's patent for improvement in book-racks, which shows a base having in its sides longitudinally extending channels or ways, in which are fitted transversely projecting slides, secured to the lower ends of adjustable walls, between which the books are clamped. This also shows sliding partitions, not, however, constructed so as to be fixed in position when not in use. When books are fitted closely between two walls or partitions, the pressure of the books, forcing out the upper ends of the partitions, causes the upper and lower faces of the slides to bind against the walls of the channels, and thus hold the partitions in their closed position, and tightly confine the books. This patent was granted April 29, 1876.

On the 4th of January, 1887, patent No. 355,511 was granted to John Danner, upon an application filed June 6, 1882, for a book support. To retain books vertically upon their edges on top of the upper shelf of a book support, or a similarly constructed shelf, the patentee provided metallic holders, with open designs, to render them lighter and more easily manipulated by the person using them. These holders were provided with hooks to engage with the edge of the upper thickness of the shelf, which was composed of two layers of wood, glued or otherwise permanently secured together, the upper projecting over the ends and sides of the lower. The holders were placed in position by sliding them forward from the end of the shelf towards its center, and against books placed thereon. Screw-buttons were inserted vertically in the ends of the shelf, that the holders could be placed as near the ends as possible without escaping. In this patent the edge of the base served as a way on which to move the partitions.

The next patent is No. 301,304, dated July 1, 1884, and issued to William B. Berry for a paper and letter file. This shows brackets or frames made of spring wire, bent to form three sides of a quadrilateral figure, with rounded corners, and having their ends properly secured to a board, which is ornamented, and intended to be suspended from a nail or hook in a wall or other upright surface. The brackets are inclined at an acute angle with the board, so as to properly hold a paper or letter, and they are placed at about equal distances from each other, leaving space for the insertion of papers or letters. The sides of the boards are preferably made to taper towards the top. The length of the brackets gradually increases from that of the top one to that of the bottom one, whereby each succeeding bracket or frame, from the top down, projects a greater distance than its predecessor from the board, so as to furnish places for different sizes of letters, papers, cards, etc. The springy character of the brackets increases their capacity, and causes them to

bind on the papers inserted between them. The mode of attaching the brackets to the board or frame is not stated, but the drawings clearly indicate that it was by inserting the ends in perforations, closely fitting them.

The Smith and Cheever reissue, and the patents to Kuhnle and Danner, clearly embody the general principles contained in the complainant's patent, and the Berry patent leaves nothing for invention in the device patented to the complainant by letters No. 386,674. There is nothing more in this patent than would result from laying the Berry block or base on a table or other horizontal surface, making it rectangular in shape, instead of tapering, and changing the direction of the perforations, so as to cause the brackets or partitions to stand upright, instead of at an angle. The change involved nothing but skill, and not a very high order of that. It was purely mechanical, and there was no invention whatever in or about it.

As for patent No. 386,675, it is entirely without merit, and should not have been granted. The claim is substantially limited to the base having rabbets and rods, the partitions having depending feet and eyes, and using the spiral form, so that the device must be duplicated upon either side. This patent is also anticipated by the Smith and Cheever, the Kuhnle, and the Danner patents, respectively. It is true that in the Kuhnle patent the partitions apparently slide in grooves formed on the edge of the base, instead of on the rods; but the rib or upper edge only is of use, and, inasmuch as in the arts, grooves, and ribs, and rods have been for many years used for ways on which to move carriages or other articles to be adjusted, it is wholly immaterial which is used in this instance. In the Danner patent the edge of the base serves as a way on which to move the partitions, and this is an equivalent of the rods. In the Smith and Cheever patent they made a rabbet for their ways on the upper side of the base for feet engaging with the grooves.

Without entering upon consideration of other defenses, the decree will be that the complainant's patent is invalid for the want of novelty, and the bill will be dismissed, with costs.